## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MICHELLE WYATT** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO: 3:21-cv-755** |
| | § | |
| **CAF MANAGEMENT, LLC** | § | |
| | § | |
| **Defendant.** | § | **JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Michelle Wyatt ("Plaintiff") complains of Defendant CAF Management, LLC ("CAF" or "Defendant") and for causes of action would show the Court as follows:

### I.

### INTRODUCTION

1.01        Plaintiff brings this action for sex discrimination, sex harassment, and unlawful retaliation under Title VII and Chapter 21 of the Texas Labor Code.

### II.

### PARTIES

2.01    Plaintiff, Wyatt is a citizen and resident of the State of Texas.  Plaintiff resides at 4236 Fryer Street, The Colony, TX  75056.

2.02    Defendant CAF is a limited liability corporation organized under the laws of Texas. Defendant's headquarters are located at 82600 Network Blvd., Frisco TX 75034.  Defendant may be served through its registered agent, Christopher Faulkner, at 3801 Parkwood Blvd., Suite 500, Frisco, Texas 75034, or wherever found.

## III.

## <u>JURISDICTION AND VENUE</u>

3.01    Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, and pendant and supplemental jurisdiction of the common law claims.

3.02    Venue for all causes of actions stated herein lies in the Northern District of Texas because the acts alleged in this Complaint took place, in whole or in part, within the boundaries of this District pursuant to 28 U.S.C. § 1391.  This Court also has pendent jurisdiction over state law claims.

## IV.

## <u>FACTUAL ALLEGATIONS</u>

4.01    Plaintiff began her employment with CAF on January 24, 2020 as a Leasing Consultant.  Plaintiff's supervisors were Property Manager Chip Crooks ("Crooks") and Assistant Manager Kaden Gayle ("Gayle").

4.02    After working at CAF for less than a month, "Edmond", the Maintenance Manager, made unwelcome sexual verbal and physical advances towards Plaintiff.  Plaintiff promptly reported Edmund's behavior to Crooks and specifically told him that "Edmund" was sexually harassing her in person and over the phone.  Crooks' responded to Plaintiff's complaint by saying: "That is just Edmond being Edmond." Crooks also told Ms. Wyatt that "Edmond" was the only one who could repair the AC units and it was probably best not to get on his bad side.

4.03    Crooks' response made Plaintiff feel extremely anxious and uncomfortable because she realized that going to her supervisor with any further complaints about Edmond was an exercise in futility, and the hostile work environment and harassment would not only persist, but could get more hostile.

4.04    Plaintiff further observed that another co-worker "Alyson", was also a target of "Edmond's" unwelcome advances.  Alyson confirmed to Plaintiff that she too felt uncomfortable in the work environment, especially when in the presence of "Edmond" and Defendant's maintenance crew.

4.05    At first, Edmond's harassment consisted of comments such as: "Damn, girl you look good today".  Later, they became more personal and more inappropriate, as evidenced by the following examples:

"Want to see my snake? (referring to his penis) It's bigger than the one we found on the patio."

"Look how big my balls are" while holding a volleyball and soccer ball between his legs." and "Why sleep in the model, girl, you can just sleep with me in mine anytime you want."

"Allison is hot, but girl, I prefer older women like you, because they are way more experienced in bed."  "Edmund" made this statement in the workplace, in front of another maintenance worker who reports directly to Edmond.

4.06    On another occasion, while sitting in Gayle's office, Edmond talked openly about Ms. Wyatt's breasts.  He looked at Ms. Wyatt and in front of Gayle said that Plaintiff should never get a "boob job."  When Ms. Wyatt asked why he would say this to her, he stated that she would be doing guys a disservice because "real is better".  Gayle took no action to discipline or stop Edmund from making these comments.

4.07    Edmond also bragged around the office that he had failed his online sexual harassment training, saying "I failed my sexual harassment training, so now I can sexually harass anyone I want".

4.08    In addition to the verbal harassment, Edmond would stroke Plaintiff's hair with his fingers and pull on her hair in a sexual manner while commenting on her figure and body parts. Plaintiff's immediate supervisor, Gayle, encouraged Plaintiff to complain about Edmond's behavior, but apparently took no action herself and made no report to upper management about Edmund's

behavior.

4.09    On April 20, 2020, Plaintiff was called into Crook's office to meet with HR Manager Courtney Rimpel ("Rimpel").  Rimpel interrogated Plaintiff about a complaint that she had made regarding another employee, Ross, who would not do his work, which resulted in Ms. Wyatt having to perform his duties in addition to her own.

4.10    Incredibly, Rimpel directed Plaintiff to continue doing Ross's work because it would be to her advantage and would allow her to move up and get all the leases.   Ross is the son of one of the CAF's investors.  Crooks told Plaintiff that she should not "piss Ross off" because of his father's title within the company.

4.11    Rimpel then asked Plaintiff if there was anything else that she wanted to talk about. Plaintiff looked at Crook as if she needed his permission to report Edmond's behavior.  Plaintiff reported to Rimpel that she did not like the way Edmond sexually harassed her around the office.

4.12    Plaintiff told Rimpel that she had asked Edmund several times to stop harassing her, but that he continued to get bolder by touching her hair and making comments about her body parts.  Plaintiff also described how she had reported this to her assistant manager and to Crooks on several other occasions.

4.13     In response to this report, Rimpel replied: "Well that's never okay for him to do that. It's very inappropriate and you need to tell Chip or me if this continues".

4.14    As she left the meeting with Rimpel, Plaintiff believed that there would finally be an investigation and that actions would be taken to stop the harassment and eliminate the hostile work environment. This was not to be.  Edmond continued to harass Plaintiff, and her complaints to management, who were aware of the harassment, was allowed to continue in the workplace.

4.15    On May 18, 2020, Plaintiff was summarily terminated. The stated reason for Plaintiff's termination was that she was wearing a sweatshirt [which was over her dress clothes

because she was cold] during working hours.  At the time she wore the sweatshirt over her work clothes for warmth, the office was not open to the public.

4.16    Defendant's stated reason for Plaintiff's termination is a pretext for retaliation for her reporting sexual harassment in the workplace.  Plaintiff had observed several employees and members of management wearing casual clothes in the office, including shorts, without receiving any discipline, let along termination.

4.17    On Plaintiff's last day of employment, Crooks commented to Plaintiff that she was creating "too much drama with Edmond."  Plaintiff understood Crooks' comment to mean that she was being punished for complaining about the maintenance manager's continuing sexual harassment and creation of a hostile work environment in the workplace.

## V.

### FIRST COUNT

### DISCRIMINATION BECAUSE OF SEX IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000(E) ET SEQ AND CHAPTER 21 OF THE TEXAS LABOR CODE

5.01    The foregoing paragraphs of this Complaint are incorporated in this count as fully as if set forth at length herein.

5.02    Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f) Title VII and belongs to a class protected under the statute, namely females.

5.03    Defendant is an employer within the meaning of 42 U.S.C. § 2000e(d) Title VII since it employs more than fifteen employees.

5.04    Defendant is also an employer within the meaning of Chapter 21 of the Texas Labor Code

5.05    Defendant intentionally discriminated against Plaintiff because of her sex in violation of Title VII and Chapter 21 of the Texas Labor Code.  by creating a work environment

hostile to women.

5.06    Plaintiff has timely filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC") and the Texas Workforce Commission.  On January 4, 2021, Plaintiff received her Right to Sue Letter dated December 31, 2020.  Plaintiff timely filed suit against Defendant within 90 days of her receipt of the Notice of right to Sue.

5.07    As a direct and proximate result of Defendant's conduct, Plaintiffs suffered the following injuries and damages:

> a.    Plaintiff suffered mental anguish and emotional distress, as well as loss of enjoyment of life, inconvenience, and general damages; and
>
> b.    Plaintiff suffered lost wages and related benefits.

5.08    Plaintiff is entitled to an award of attorneys' fees and costs under Title VII, U.S.C. §2000e-5(k).

5.09    Defendant violated Title VII and Chapter 21 of the Texas Labor Code by discriminating against Plaintiff in connection with compensation, terms, conditions, or privileges of employment because of Plaintiff's sex.   Plaintiff was subjected to a continuous course of harassment and worked in a sexually hostile environment.

5.10    Such discrimination by Defendant against Plaintiff was intentional.  Accordingly, Plaintiff is entitled to recover damages for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other non-pecuniary damages.   Further, this discrimination was done with malice or with reckless indifference to Plaintiff's federally protected rights.   Plaintiff is therefore also entitled to recover punitive damages.

# VI.

## SECOND COUNT

## UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C. § 2000(E) ET SEQ and CHAPTER 21 OF THE TEXAS LABOR CODE.

6.01     The foregoing paragraphs of this Complaint are incorporated in this count as fully as if set forth at length herein.

6.02     Pursuant to 42 USC section 2000(E) *et seq*., an employer commits an unlawful employment practice if the employer retaliates or discriminates against a person who opposes a discriminatory practice; makes or files a charge; files a complaint; or testifies, assists, or participates in any manner in an investigation, proceeding, or hearing.

6.03     The same provision I found in Chapter 21.055 of the Texas Labor Code.

6.04 Defendant retaliated against Plaintiff after she complained to Defendant about the unwelcome advances and sexually hostile environment in the workplace by terminating Plaintiff's employment.

6.05     Defendant terminated Plaintiff's employment on May 18, 2020.  Defendant's stated reason for Plaintiff's termination was that Plaintiff was wearing casual clothes at work.  This stated reason is a pretext for retaliation because Plaintiff had committed no wrongdoing, and because other employees who had engaged in similar conduct were never disciplined or terminated.

6.06.     Defendant knowingly and willfully retaliated against Plaintiff for her protected activity in violation of Title VII.

6.07     Defendant's conduct was malicious and/or taken with reckless disregard for Plaintiff's rights.  It was foreseeable by Defendant that Plaintiff would suffer harm as a result of the retaliation and discrimination.

## VII.

## THIRD COUNT

## <u>NEGLIGENT RETENTION</u>

7.01    The foregoing paragraphs of this Complaint are incorporated in this count by reference as fully as if set forth at length herein.

7.02    On information and belief, Defendant had ample notice of the propensity of "Edmund" to harass female employees.  Defendant was under a duty to inquire as to the competence of Edmund whom they retained in their employment, especially after instances of employee abuse had occurred and had been reported.

7.03    Nevertheless, such Defendant retained Edmund a known harasser of women in its employ and was therefore directly negligent toward Plaintiff and liable for the damages that were proximately caused by this employee's sexual assaults of Plaintiff.

7.04    Plaintiff's damages include past and future lost earnings, past and future damages to earnings capacity, past and future mental anguish and emotional distress, and other actual damages.

7.05    Defendant, in retaining this employee in its employment, was grossly and wantonly negligent in that it subjected Plaintiff to an extreme risk of sexual assault.  Defendant was consciously indifferent to the extreme peril that the retention of this employee created, in that Defendant knew from prior incidents that this employee's conduct constituted an extreme risk of peril to employees under its supervision and continued in that course of conduct because it was indifferent to the peril to others that this employee created.

7.06    Plaintiff is therefore entitled to recover exemplary damages.  Accordingly, Plaintiff sues for exemplary damages.

7.07    Such acts and conduct were committed with malice, in that this employee was acting in the course and scope of such employment or proximately to his employment,  specifically intended to cause substantial injury to Plaintiff, or in the alternative, committed acts or omissions which, when viewed objectively, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others, and of which Defendant  had actual, subjective awareness of the risks involved, and nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

7.08    Defendant authorized the doing and the manner of the acts by this employee, who were acting in the scope of employment for Defendant. Therefore, Defendant is liable to Plaintiff for exemplary damages, which Plaintiff seeks.

## VIII.

## JURY TRIAL DEMANDED

8.01    Plaintiff demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have and recover and the following relief against Defendant:

(1)    Judgment for actual damages in the amount of past and future lost earnings and benefits and damages to past and future earnings capacity;

(2)    Judgment for back pay and front pay as allowed by law;

(3)    Judgment for past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life and other non-pecuniary losses;

(4)    Damages for past and future mental anguish, emotional distress, and physical distress;

(5)     Exemplary damages in an amount to be determined by the trier of fact;

(6)     Prejudgment and Post-judgment at the maximum legal rate;

(7)     All costs of court;

(8)     Attorneys' fees; and

(9)     Such other and further relief to which Plaintiffs may be justly entitled.

Date:  March 31, 2021.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By:   /s/ Nicholas A O'Kelly

Nicholas A O'Kelly
State Bar No. 15241235
**KILGORE LAW CENTER**
3109 Carlisle
Dallas, Texas 75204
(214) 379-0827 - Telephone
 (214) 953-0133 - Telecopier
email: nao@kilgorelaw.com

**ATTORNEY FOR PLAINTIFF**
**MICHELLE WYATT**